Will the clerk please call the first case of the morning? All right. First case this morning, 3-15-0513WC. URS Energy &amp Construction v. Mark Cook, Stephen Klesnik for the appellant, Stephen Young for the appellee. Counselor? Hey. Oh, not here. Can't see a room. Wonderful. Well, let's see if it's okay with Ben to pass on to the second case. Yes. Do we know? Oh, there we go. Thanks for joining us. Thank you. May it please the court? Counsel? My name is Steve Klesnik and I represent the employer in this appeal. The primary issue of this appeal is the causal connection of the shoulder condition, which requires surgery. And the secondary issue is whether or not the employer is liable for shoulder surgery. The standard of review for this appeal is the manifest weight of the evidence. The employer asserts that the commission's decision is against the manifest weight of the evidence. He has an opposite conclusion. It's clearly apparent for these issues. Did this case proceed on the theory of a chain of events? Well, that's what the employee is arguing on appeal. The commission did not specifically state that their opinion, their decision was based on a chain of events. But based on the facts of this case, I don't believe a chain of events argument applies here. And specifically, the employee underwent left elbow surgery on October 2nd, 2013. At hearing, the employee testified that he started having stiffness in his shoulder three to four weeks after the surgery  The shoulder complaint was first documented by a doctor in Dr. Mitzelfeldt's note from November 21st, 2013. In the January 16th, 2014 note from Dr. Mitzelfeldt, Dr. Mitzelfeldt reported that the employee told him that the left shoulder pain spontaneously occurred several months ago, was waxing and waning in severity with the pain intensifying after the arm came out of the sling for the elbow. We took Dr. Mitzelfeldt's testimony via evidence deposition and he testified that he did not think the shoulder complaints were due to overuse because the employee was not using the arm when it was in the sling. But he said that, quote, things get a little bit flared up, end quote, due to the immobility. But it shouldn't be anything that wouldn't go away with physical therapy. The only treatment that Dr. Mitzelfeldt was recommending was six more weeks of physical therapy. After we took Dr. Mitzelfeldt's deposition, the employee underwent an MRI of the left shoulder. The first reference in medical records to any left shoulder symptoms was on November 21st, correct? That's correct. Well, doesn't that support the claimant's position? I don't think it does. I mean, if you look at the results of the MRI, which were a slap type two tear, a partial rotator cuff tear with tendinosis, a small volume of fluid signal intensity in the subacromial, subdeltoid versa, and an apparent chondrolysis of the anterior inferior glenoid. Now, after the MRI, the employee saw Dr. Garst. And according to Dr. Garst's February 10th, 2014 office note, the employee said that he was not sure if he had symptoms in the shoulder before the elbow surgery, but the symptoms got worse while his arm was in the shoulder. Now, this was different than what he testified to at hearing. Now, the only medical opinion is from Dr. Mitzelfeld, and again, he's saying that it's muscle spasms due to immobility, which should be taken care of with six more weeks of physical therapy. That's the only cause of connection opinion, and there is no opinion that the findings in the MRI are causally connected to the elbow surgery or the accident or the arm being in a sling. Can I ask you a question? Did he ever have elbow problems before this employment event? He did have prior elbow problems. He testified that he worked out of state for a prior employer and did have elbow problems there. Were there any medical records that suggest what type of problem he had? No, we didn't have any medical records to indicate what problems prior elbow was. So how then did Dr. Leo Pine, that his left shoulder condition was preexisting, and that he simply had a manifestation of symptoms during work? If there's no medical records to suggest what condition he had, how did he do that? I think Dr. Lee talked to the employee during the IME and got the specifics as to what was wrong with the shoulder, and I think that's what Dr. Lee based his opinion on. Well, I mean, the only thing we know from the medical records is what the condition of the shoulder was after the employment event. There's nothing in the medical records to tell us what the condition of the shoulder was before the employment event, opine that his symptoms are related to a preexisting condition. Don't you have to know what the condition is first? Dr. Lee gave an opinion as to the left elbow. Dr. Lee did not give an opinion as to the shoulder. He was opining as to the left elbow. Is there any medical records as to what his condition was before the event? No, no, Your Honor. We have no records for his condition, whether it's the elbow or the shoulder, prior to the work accident. As long as you're responding to pointed questions, how would you respond to this? It appears to me without substantial dispute that at a minimum his left shoulder symptoms worsened, right, after the medical records support that. I agree. What about the argument that at a minimum the records support the inference to claim they had a preexisting left shoulder condition that was aggravated by the work-related elbow surgery? How do you respond to that? Well, I would respond to it that his arm was completely immobilized. He had tears, he had multiple tears in his shoulder. And that's what Dr. Garst wants to do surgery to repair. Common sense and logic dictate that if your arm is immobilized, you're not going to be, it's certainly not going to cause any tears in your shoulder. And it's not going to aggravate any of your shoulder, any tears in the shoulder, because your arm is immobilized, it's in a sling. It's just like if you break your arm, if you have a fracture in your arm, if your arm is immobilized, it's not going to aggravate the fracture because your arm is immobilized. So I think for a finding to be made that the immobilization of the arm due to the elbow surgery is an aggravation, I think you need a medical opinion for that. I mean, if you're just looking at it from a layperson's standpoint, how can you aggravate a tear, tears in the shoulder if your arm is immobilized? And that's why I don't think a chain of events applies to this. And while I agree with you that, you know, his testimony at least gives some color to the argument that there's an aggravation while he's in there, if you look at what's actually going on in the shoulder based on the MRI, I just don't think a layperson's, you know, common sense and logic can lead you to that. You need a doctor's opinion to say, to tie that all up under the circumstances. Do you have a claimant to recover? He always needs a doctor's opinion? Not all the time, but I think in this case, I mean, if you've got an arm that's immobilized and you have tears in the shoulder, you need a medical opinion to tie that up. Because common sense and logic will dictate that if your arm is immobilized, there's not going to be an aggravation of that shoulder condition. What happens when you immobilize a muscle? It's not in use? Atrophy. That's what we have rehab for. True. So an immobilization can cause atrophy in a muscle, which, you know, I understand your argument, I'm just saying that it's not, is it totally outside the realm of possibility that a layperson could feel an aggravation through a mechanism that is well known? I think it is, because to me, I don't know if atrophy would aggravate a tear. You're saying that there's some knowledge beyond that that's not available to the general public. It could be possible, Your Honor. I just don't know that as not a medical professional. I don't know if that's true. So while your argument has some intuitive appeal, what about the doctrines that say that the commission is recognized to have some expertise in medical matters and we have to defer their expertise in resolving medical issues? Well, then it would have been nice to see that in the commission's decision that that's what they came to. But as I pointed out in my brief, I think there was a twisting of Dr. Mitzelfeld's testimony to get where they got to, and so I don't think there's, while I agree with your position, I don't think that it's supported or it's well documented in the commission's decision. And I would also like to point out that he did say initially to Dr. Garst that he wasn't sure if he had shoulder symptoms prior to the elbow surgery. So there is some evidence, and I would assert that that statement should be given more weight because it was made closer to the time that these events were occurring and wasn't testimony occurring. So I think that statement should be given more weight. So in conclusion, I believe that based on the evidence, it's clearly apparent that the employee has failed and is burdened to prove the shoulder condition requiring surgery is causally connected to the accident, the elbow surgery, or the immobilization of the arm due to the sling, as such the commission's decision that it was, and the award of prospective medical in the form of shoulder surgery is against the manifest way of the evidence, and therefore the circuit court's order affirming the commission's decision must be reversed. Thank you. Thank you, counsel. You'll have time on the reply. Thank you. Counsel, you may respond. May it please the court? Counsel, my name is Damon Young, and I represent the employee in this case. I agree with Mr. Kleszek that the standard of review in this case is manifest weight. In my opinion, the appellant is asking the court to re-weigh facts in this case, and the proof of that in his brief, he didn't even quote a case in his causation argument. He seems to be focusing in on one argument that we'd like you to address. He's saying, look, okay, he has his shoulder surgery, or he has the elbow surgery, it's immobile. And there doesn't seem to be any specific medical testimony connecting that with the aggravation or cause of the problems in the shoulder. There's a missing, there's a gap in the evidence. How do you address that? Okay. Reading the doctor's, Dr. Mitzelfels' evidence deposition, he does initially state that it was an overuse syndrome issue in his testimony. About five or six pages later, the next three pages, we discuss the shoulder injury itself. And he explains it like this. While it wasn't the classical overuse syndrome, what he explained was, once your arm is immobilized in a sling, for the elbow surgery, there is movement for the shoulder. And what he explained was, as he's protecting the elbow and he's moving the shoulder, and what he says in those situations is, is it caused soreness, lack range of motion, and more specifically, inflammation. And he testified that all these conditions were related to that situation. Immobilization? Well, immobilization was for the elbow only. It was in a sling. He was able to use the shoulder and to protect the elbow is how he explained it in his deposition. So it's a little bit different than what the appellant is arguing, that you take one line out of like five pages of testimony to say he didn't say it was an overuse syndrome. He did initially, but he clarified, because he's protecting the elbow, he's using the shoulder more. While the shoulder, or the elbow is immobilized, the shoulder was not. And this caused the inflammation, the pain, and the range of motion issues that he was having, and that he recommended conservative care, which is physical therapy. So the doctor really did opine some reasoning why the shoulder was aggravated, right? Oh, absolutely. And I asked him specifically, was the elbow and the left shoulder treatment up to that point, which was right before the MRI, I think a few weeks before the MRI, and he stated that yes, that was reasonable and necessary medical treatment. And that's what I'm saying, if you take the totality of his testimony, not just one line, which is what the appellant is using in his argument, I think it creates a clear picture, and that's part of my argument. Secondly, another line that the appellant is stating is this one line in a medical record that states he was unsure about his shoulder treatment. While this was clarified in direct examination, cross, and redirect, specifically, did you have any shoulder complaints prior to the surgery? Dr. Mitselfeld states in his medical records and his deposition, he did not have shoulder problems or complaints prior to the sling coming off. And so I think that saying unsure to a doctor is not admission, but it's not stating it wasn't a problem. So if I say at the time I was unsure, but man, it really hurt after it came out of the sling, that's not a definitive statement saying I had shoulder problems prior to, but it got worse. And so if you use, I think the commission focused in on the testimony, Dr. Mitselfeld's records and Dr. Garst's records in regards to these prior problems. My client in 2008 did have prior elbow problems, but he testified at trial that was consistent with any medical treatment, that he was asymptomatic prior to taking this job. He worked this job for a couple years, maybe 18 months, and started to develop elbow problems. He went for treatment from February 2013 until he had his surgery October 2013, never making any statements or had any complaints of shoulder problems. The first time in the medical records that he had shoulder problems is after he comes out of surgery, about a month or two later when they take the sling off, then the shoulder has problems. And if you read, like I said before, the medical records and the testimony that he has range of motion issues, he has inflammation, and he has pain in that shoulder, which is consistent with the findings in the MRI that was found later. In this case, I think, and what I state is that we have a chain of events of going through this, is you have an appellant that gets worse enough or bad enough that he has to seek medical treatment. He seeks medical treatment, as we can see through the records, no shoulder complaints. He then comes out of the sling, has shoulder problems. His doctor, while not knowing the extent of the injury, at least calls and connects the symptoms and the pain complaints, and then he goes on to have an MRI, then has shoulder surgery. And I believe, and then also when the appellant looks through or tries to pull from that the arbitrator relied upon this overuse syndrome line and calls and connects it, that is stated in the decision and the commission affirms. But what's also important is that arbitrator Dawson also noted that he found Dr. Mintz-O-Felt's testimony credible, or more credible than Dr. Lee's, and he stated he used the totality of the evidence to find that one, the left elbow was causally related and the left shoulder was related. So your position, bottom line, is you're going to say there's sufficient evidence to support the commission's decision? Absolutely. And that's why I believe that the commission decision should be affirmed. Thank you. Thank you, counsel. Counsel, you may reply. I found the testimony that counsel was indicating, and it's on page 9 of Dr. Mintz-O-Felt's deposition, and his testimony is, I guess the question is, and what do you relate the shoulder stiffness and medial elbow pain to? It's just from the, you get a lateral epicondylitis and you overuse your shoulder, and usually the medial elbow, and then after surgery you have to protect the lateral elbow, so you're just kind of using the shoulder so you get some tenderness and inflammation there. Then later on, he testifies that, but I don't think that it's overuse because you can't use this, and so these get a little flared up, but it shouldn't be anything that doesn't go away with therapy. There's nothing on the MRI, and this is back in May 6th of 2013, that's when the MRI of the elbow was done, and I guess part of the upper arm, that showed anything on the elbow and the shoulder wasn't bothering him before. I think a lot of it is you've got a splint on and he has some muscle spasms, and they get tight and they ache, and that's something that should go away with therapy. So again, that's the medical testimony regarding the shoulder. He's taking tenderness, inflammation, and muscle spasms, but again, the MRI of the shoulder showed clear tears in the shoulder, and there's no, as I asserted previously, while it's possible that all this stuff might aggravate a tear in the shoulder, I don't think from a layperson's standpoint or common sense or logic would dictate that that's, it's certainly not going to cause a tear, and I don't think it's, that's from a layperson's standpoint, that that's going to support a finding of an aggravation. So I think in this case, that there should have been some improvement in the shoulder with the elbow, the accident itself, the elbow surgery, or the immobilization. Thank you. Very good. Thank you, counsel, both for your arguments on this matter this morning. It will be taken under advisement and a written disposition shall issue.